FILED
IN CLERK'S OFFICE
US DISTRICT COURT
★ AUG 11 2011
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
ARTHUR KELLY,

                      Petitioner,

-against-

SUPERINTENDENT JAMES CONWAY, et al.,

                      Respondent.
-----------------------------------------------------------x

**MEMORANDUM & ORDER**

10-CV-3053 (ENV)

**VITALIANO, D.J.**

Pro se petitioner Arthur Kelly is before the Court on his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the writ is denied and Kelly's habeas petition is dismissed.

## I. BACKGROUND

On April 26, 2003, Joey Pizzingrillo, Freddy Benevento, and Irene Pizzingrillo were shot at Avenue V and East 15th Street in Brooklyn, New York. Immediately after the shots were fired, an eyewitness, Simon Chan, saw the shooter move toward 16th Street and place the gun in a shopping bag. Chan first selected petitioner from a photo array, and, later that day after Kelly's arrest, he also selected him during an in-person lineup.

During pretrial proceedings, the defense challenged the lineup as suggestive and the court held an independent source hearing. The hearing court suppressed the lineup identification, finding that Kelly was the only individual of six men in the lineup who matched Chan's description of the gunman as having gray hair and being slightly bald. There was another shoe, however. The hearing court also found that Chan "had an opportunity [to] register the distinctive

1

features of this person and the next day he identified him in a photo array." The court did not suppress the photo array identification and permitted Chan to identify petitioner in court at trial.

The defense also challenged the legitimacy of the search of petitioner's home conducted by police officers on April 26, 2003. Petitioner's wife, Agnes Kelly, was present and authorized the search in writing. At the pretrial hearing, the defense questioned her authority to consent to the search of a suitcase found in the bedroom, arguing that it belonged only to petitioner, and characterizing the police conduct as "overbearing." On November 9, 2004, the hearing court took testimony from one of the two police detectives who conducted the search; the other detective was serving in the Armed Forces in the Middle East and unable to testify. The absent detective was the one who actually found and opened the suitcase. Notwithstanding his absence, the court ruled that because the locks were not engaged when the suitcase was found, there was no expectation of privacy and the suitcase and its contents were therefore admissible.

On November 24, 2004, following a jury trial, Kelly was convicted of three counts of murder in the first degree and was sentenced to three prison terms of life without the possibility of parole. Kelly appealed his conviction to the Appellate Division, Second Department, raising three claims: (1) that the trial court erred in finding that Chan had a source independent of the tainted in-person lineup for identifying him in court; (2) that the People did not establish that Agnes Kelly, petitioner's wife, voluntarily consented to the police search of their home, and further, that any consent she may have given could not and did not apply to the suitcase located in their bedroom; and (3) that the court erred in allowing Agnes Kelly's testimony that the suitcase found in their bedroom belonged to petitioner in that such testimony violated Kelly's right to confront witnesses against him. The Appellate Division affirmed the conviction, People v. Kelly, 58 A.D.3d 868, 872 N.Y.S.2d 499 (2d Dep't 2009), and, on April 14, 2009, Kelly's

2

application for leave to appeal was denied by the Court of Appeals, People v. Kelly, 12 N.Y.3d 818, 908 N.E.2d 933, 881 N.Y.S.2d 25 (2009).

In July 2010, Kelly filed the instant petition. He argues (1) that the state did not meet its burden of showing that petitioner's wife consented, or had the authority to consent, to the search of the suitcase found in their bedroom, and (2) that the suggestive lineup tainted the eyewitness's in-court identification of petitioner and should have been suppressed.

## II. **STANDARD OF REVIEW**

The Supreme Court has made it clear that "[a]s amended by [the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")], § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." Harrington v. Richter, 562 U.S. ___, 131 S. Ct. 770, 786 (2011). "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal. Id. (quoting Jackson v. Virginia, 443 U.S. 307, 332 n.5, 99 S. Ct. 2781, 2795 n.5 (1979)). Pursuant to AEDPA, a federal court is not free to issue a writ of habeas corpus under the independent "contrary to" clause of 28 U.S.C. § 2254(d)(1) unless "the state court arrive[d] at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decide[d] a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413, 120 S. Ct. 1495, 1523 (2000) (O'Connor, J., for the Court, Part II). Similarly, a federal court is not free to issue a writ of habeas corpus under the independent "unreasonable application" clause unless "the state court identifie[d] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." Id. at 413, 120 S. Ct. at 1523. But a state court's "unreasonable application" of

3

law must have been more than "incorrect or erroneous:" it must have been "'objectively unreasonable.'" Sellan v. Kuhlman, 261 F.3d 303, 315, 120 S. Ct. at 1521 (2d Cir. 2001) (quoting Williams, 529 U.S. at 409 (O'Connor, J., for the Court, Part II)).

Lastly, claims that were not adjudicated on the merits in state court are not subject to the deferential standard that applies under AEDPA. See, e.g., Cone v. Bell, 129 S. Ct. 1769, 1784 (2009) (citing 28 U.S.C. § 2254(d)). But where AEDPA's deferential standard of review does apply, "[d]etermination of factual issues made by a state court 'shall be presumed to be correct,' and the applicant 'shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'" Smith v. Herbert, 275 F. Supp. 2d 361, 365-66 (E.D.N.Y. 2003) (quoting 28 U.S.C. § 2254(e)(1)). "This presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility." Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003). This is because "[a]lthough state prisoners may sometimes submit new evidence in federal court, AEDPA's statutory scheme is designed to strongly discourage them from doing so." Cullen v. Pinholster, 131 S. Ct. 1388, 1401 (2011). Under AEDPA's deferential standard of review, "'federal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings.'" Id. (quoting Williams, 529 U.S. at 437, 120 S. Ct. at 1479).

### III. DISCUSSION

#### A. Fourth Amendment Violation

Kelly first argues that his Fourth Amendment rights were violated because his wife did not have the authority to consent to the police search of the suitcase found in their bedroom. He further argues that even if his wife did have the authority to consent, her consent was not freely given because the police officers extracted the consent after "wearing her down, over a long

4

period of time." It is well-established that "review of fourth amendment claims in habeas petitions [are] undertaken in only one of two instances: (a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." Capellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992). Neither situation exists here. Critically, "federal courts have approved New York's procedure for litigating Fourth Amendment claims, embodied in N.Y. Crim. Proc. Law § 710.10 et seq. . . . as being facially adequate." Capellan, 975 F.2d at 70 n.1 (internal quotation marks and citations omitted); see also Brown v. New York Supreme Court, No. 10 Civ. 7728, 2011 WL 2652451, at *9 (S.D.N.Y. July 7, 2011); Stapleton v. Graham, 09-CV-0382, 2011 WL 1748734, at *5 (E.D.N.Y. May 6, 2011). So, Kelly fails on the first prong.

Petitioner fares no better on the second either as he cannot demonstrate an "unconscionable breakdown" of the available procedures. An unconscionable breakdown has been found when "the hearing judge fail[ed] to make a reasoned inquiry," Angeles v. Greiner, 267 F. Supp. 2d 410, 417 (E.D.N.Y. 2003), "yielded to mob intimidation of the jury" or "did not provide rational conditions for inquiry into federal-law questions." Capellan, 975 F.2d at 70. Kelly claims several "unconscionable breakdowns" in the state procedures afforded to him. He argues that his wife did not have the authority to consent to the search of his suitcase in which the gun holster and ammunition were found, that the search of the suitcase was beyond the scope of his wife's consent, that his wife's consent was not freely given because the police wore her down after many hours of questions, that there was no evidence that the suitcase was unlocked, and that the prosecution failed to call at the pretrial hearing the detective who found the suitcase. But, these arguments challenge only the hearing court's decision. In that respect they stretch the

5

doctrine of "unconscionable breakdown" past its breaking point, as "mere dissatisfaction or disagreement with the outcome of [his] suppression motion is not sufficient to establish that an 'unconscionable breakdown' occurred" in violation of his Fourth Amendment rights. Goodwin v. Duncan, 668 F. Supp. 2d 509, 517 (W.D.N.Y. 2009) (citing Capellan, 975 F.2d at 71; Gates v. Henderson, 568 F.2d 830, 840 (2d Cir. 1977)).

It is clear that Kelly took full advantage of the New York procedures, participating in a pretrial Wade/Mapp/Dunaway evidentiary hearing, which included witness testimony and cross examination. Petitioner also argued to the Second Department that the lower court erred when it deemed the search fruits admissible after admitting and crediting Agnes Kelly's testimony that the suitcase belonged to petitioner. Those contentions were rejected when the Appellate Division affirmed the judgment of conviction. "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief." Capellan, 975 F.2d at 70 (emphasis in original) (quoting Stone v. Powell, 428 U.S. 465, 481-82, 96 S.Ct. 3037, 3046 (1976)); see, e.g., Graham v. Costello, 299 F.3d 129, 133-34 (2d Cir. 2002) ("As a general rule, Fourth Amendment claims are not reviewable by the federal courts when raised in a petition brought under § 2254 unless the state prisoner shows that he or she has not had a full and fair opportunity to litigate that claim in the state court."). Dispositively, given the absence of any evidence that there was a breakdown in the hearing afforded to Kelly on his claims, the Court cannot relitigate these issues on habeas review. See, e.g., Ramdeo v. Phillips, 04-CV-1157, 2007 U.S. Dist. LEXIS 49483, at *71-*74 (E.D.N.Y. July 9, 2007) (denying habeas relief for alleged Dunaway violation since petitioner "failed to show a lack of State corrective procedures or a breakdown in the underlying process"); Simpson v. West, 05-CV-2279, 2006 U.S. Dist. LEXIS 31133, at *15-

6

*16 (E.D.N.Y. May 18, 2006) (denying habeas relief on Stone v. Powell grounds because "[p]etitioner had a full and fair opportunity to litigate this claim in the state court Dunaway/Huntley/Mapp hearing"). Kelly's Fourth Amendment claim is dismissed.

### B. Wade Violation

Petitioner also challenges the hearing court's determination regarding Chan's identification testimony. On April 26, 2003, the day of the shooting, Chan identified Kelly as the gunman from a photo array. Later that day, after petitioner was arrested, Chan again selected petitioner from a double-blind lineup. Kelly renews the argument, partially successful below, that the lineup was suggestive because he was the only one who fit Chan's description of the gunman and because "earlier that day . . . Chan had picked ppetitioner [sic]" out of the photo array. As an initial matter, the attack on the in-person lineup is irrelevant as the trial court suppressed it after holding a Wade hearing. Moreover, because the photo array occurred prior to the lineup and was not found to be suggestive, the suggestiveness of the lineup could not have impacted the legitimacy of the photo array. (There was no specific attack that the photo array itself was suggestive in any way.) As the trial court observed and found at the Wade hearing, because "[t]he computer generated the pictures in . . . the photo array, it seems to me, a very fair array . . . ." The trial court also found, persuasively, that Chan "had an opportunity [to] register the distinctive features of this person and . . . he identified him in a photo array." As such, since Chan had a sufficient opportunity to observe the gunman, the court determined that he was able to make an untainted and reliable identification and allowed him to do so during trial.

Review of Kelly's petition must give effect to the understanding that pretrial identifications which are unduly suggestive violate the due process rights of a defendant and, therefore, are not admissible at trial to determine the guilt or innocence of the accused. People v.

7

Chipp, 75 N.Y.2d 327, 335, 552 N.E.2d 608, 612, 553 N.Y.S.2d 72, 76 (1990) (citing United States v. Wade, 388 U.S. 218, 87 S. Ct. 1926 (1967)). The Supreme Court has held that "[i]t is the likelihood of misidentification which violates a defendant's right to due process," making an identification procedure that leads to a very substantial likelihood of misidentification the "primary evil to be avoided." Neil v. Biggers, 409 U.S. 188, 198, 93 S. Ct. 375, 381-82 (1972). "Suggestive confrontations are disapproved because they increase the likelihood of misidentification, and unnecessarily suggestive ones are condemned for the further reason that the increased chance of misidentification is gratuitous." Id. "In sum, the identification evidence will be admissible if (a) the procedures were not suggestive or (b) the identification has independent reliability." Abdur Raheem v. Kelly, 257 F.3d 122, 133 (2d. Cir. 2001) (citations omitted). The factors to be considered in determining reliability "include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." Biggers, 409 U.S. at 199-200, 93 S. Ct. at 382. No one factor, in and of itself, is dispositive. Raheem, 257 F.3d at 135 (citing Biggers, 409 U.S. at 199-200, 93 S. Ct. at 411).

Even without giving deference to the Appellate Division's summary finding that Kelly's claim on appeal was meritless, the claim cannot be sustained on any fair analysis. As noted previously, the suggestive lineup could not possibly have tainted the photo array, and there is no evidence of any kind that the lineup affected the in-court identification at trial. Chan, the record shows, had a good opportunity to view Kelly—he drove down Avenue V between 15th and 16th Streets as Kelly ran past. He was able to recall the gunman's age, the direction in which he ran, that he turned on 16th street, the length of his coat, the color of his hair, and that he was holding

8

the gun and placed it in a shopping bag. Considering the level of detail and Chan's certainty, the identification was sufficiently reliable to be placed before the jury. Reviewing this record de novo, the Court finds that both the photo array and the subsequent in-court identifications made by witness Chan were independently reliable and not the result of an impermissibly suggestive identification procedure. Therefore, under the totality of the circumstances, the Court finds no error in the state courts' adverse determination of petitioner's contention that he was the victim of an impermissibly suggestive identification process. Cf. Jimenez v. Walker, 458 F.3d 130, 147 (2d Cir. 2004). More importantly, even if there was error in either the substance of or the adjudicatory process resulting in those determinations, it certainly does not rise to the level required under AEDPA, that is, that the determinations are "an 'unreasonable,' not simply incorrect or erroneous, application of federal law." Cox, 387 F.3d at 200 (citing Williams, 529 U.S. at 412, 120 S. Ct. at 1523), or, stated differently, that they "reflect some additional increment of incorrectness such that [they] may be said to be unreasonable." Id. (citing Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001)). The claim is denied.

## IV. CONCLUSION

For the foregoing reasons, the petition for habeas corpus filed by Arthur Kelly is dismissed and the writ is denied. Since petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue. 28 U.S.C. § 2253(c)(2). In this light, the Court certifies pursuant to 28 U.S.C. § 1915(a) that any appeal from this Memorandum and Order would not be taken in good faith and therefore in forma pauperis is denied for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444-45, 82 S. Ct. 917, 920-21 (1962).

The Clerk of the Court is directed to enter judgment and to close this case.

**SO ORDERED.**

Dated: Brooklyn, New York
      August 9, 2011

                                          ERIC N. VITALIANO
                                          United States District Judge